CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 23, 2024

LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KIMBERLY MAYHEW BARKSDALE,     )
      Petitioner,     )
      )    Civil Action No. 7:23-cv-00724
v.     )
      )    By:  Elizabeth K. Dillon
CHADWICK DOTSON,     )      Chief United States District Judge
      Respondent.     )

## MEMORANDUM OPINION

Kimberly Mayhew Barksdale, a Virginia inmate proceeding *pro se*, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  She is serving a life sentence following a conviction for first-degree murder and the use of a firearm in the commission of murder.  Petitioner raises several claims for ineffective assistance of counsel based on a variety of issues, including the pursuit of an insanity defense, petitioner's speedy trial rights, and petitioner's right to confront a witness, her daughter, who testified on closed-circuit television. (*See* Habeas Pet., Dkt. No. 1.)  Respondent has moved to dismiss the petition.  (Dkt. No. 14.) Petitioner filed motions to appoint counsel (Dkt. Nos. 3, 13) and for an evidentiary hearing (Dkt. No. 12).

For the reasons stated herein, the court will deny the motions to appoint counsel and for an evidentiary hearing, grant the motion to dismiss, and deny Barksdale's petition.

## I.  BACKGROUND

### A.  Facts of the Crime

Petitioner was convicted of murdering her husband, Todd Barksdale.  One of the fact witnesses at trial was Rebecca Smith, who worked at Express Lane Exxon in Altavista, Virginia.

Smith knew petitioner and Todd as customers of the store.  (R. 1756–57.)[1]  Smith testified that

petitioner talked to her a lot about her personal issues.  (R. 1759.)  Prior to his murder, Smith saw

petitioner approach Todd while he was pumping gas, and petitioner was screaming and waving

her hands and told him to "watch your back."  (R. 1760.)  Petitioner came into the store, and

Smith heard her say, "he better run."  (R. 1763.)

     E.B., the daughter of petitioner and Todd, was twelve at the time of the murder and

fifteen at the time of trial; she testified via closed-circuit television.  (R. 1770–71, 1792.)  E.B.

testified that she loved her dad, got along with him, and he had never hurt her.  (R. 1773.)  E.B.

had heard her mom, the petitioner, threaten Todd.  One day she said, "I'm going to kill that son

of a bitch."  (R. 1777–78.)  Petitioner told E.B. that her father was a bad person, but E.B. never

saw any proof of that.  (R. 1778.)  E.B. never saw her dad act angrily or mistreat petitioner.  (R.

1799.)

     On the day of Todd's murder, November 18, 2016, E.B. and Todd went to petitioner's

home to look for E.B.'s cat and a video game.  (R. 1780.)  Todd also told E.B. that he was going

to repair a hole in the fence.  (R. 1781.)  When they arrived, petitioner was sitting on the back

porch.  (*Id.*)  They could not find E.B.'s cat, and E.B. thought her mother was acting odd and did

not care about the cat.  (R. 1782–83.)  E.B. and Todd returned to his truck and drove over to the

hole in the fence he was going to repair.  (R. 1784–85.)  E.B. was sitting in the passenger seat

playing Pokemon Go as her father worked on the fence.  (R. 1785.)  E.B. heard a loud bang and

jumped out of the truck; she saw petitioner with a gun in her hand and Todd on the ground

slumped over with blood pouring down the side of his head.  (R. 1786.)  Petitioner told E.B. "this

---

[1] The manuscript record is compiled and indexed as Exhibit 1A at Docket Nos. 20-1, 21-1, 22-1, 23-1, and 24-1 (R. 1–1167).  The trial court record transcript is compiled and indexed as Exhibit 1B at Docket Nos. 18-1, 18-2, and 18-3 (R. 1168–2114).

was all for you" and tried to hug her, but E.B. ran away to her neighbor's house. (R. 1789.) Petitioner chased E.B. but did not go inside the neighbor's house; E.B. told the neighbor what happened. (*Id.*) E.B. had not seen Todd arguing with petitioner that day. (R. 1791.)

Deputy Justin Wyatt arrived on the scene. (R. 1810.) Deputy Wyatt first spoke to E.B., who was scared, screaming, and very emotional. (R. 1811.) Deputy Wyatt then saw petitioner, pointed his weapon at her, and gave her a command to show her hands. When petitioner complied, she was detained in handcuffs. (R. 1812.) Deputy Wyatt observed Todd slumped on the ground. (R. 1814.)

Sergeant Michael Abbott also arrived on the scene. (R. 1819.) He observed a male behind his pick-up truck and between the truck and a fence on his knees. (R. 1820.) Sergeant Abbott identified the man as Todd and gave verbal commands as he approached. (R. 1821.) Sergeant Abbott saw no signs of life as he approached closer to the victim. (*Id.*) Sergeant Abbott located a handgun on the front steps of the house. (R. 1822.)

Analysis was conducted on the bullet taken from the victim's head during the autopsy and the firearm recovered from the scene. This analysis concluded that the bullet had been fired from that firearm. (R. 1861–62.)

The autopsy was performed by Dr. Gayle Suzuki. (R. 1876.) Todd had a gunshot wound behind the left side of his ear. (R. 1878.) The bullet passed through his skull, through the left side of the brain, through the brain stem, and lodged in the right side of his brain area. (*Id.*) The single gunshot wound was the cause of death. (R. 1879.) Dr. Suzuki testified that the bullet's path was a slightly downward trajectory. (R. 1883.) Dr. Suzuki testified that the bullet's trajectory resulted in "taking out the brain stem" and that Todd's death was "pretty much

instantly, [] lights out." (R. 1884.)  On cross examination, Dr. Suzuki agreed that there was no way to tell how close the gun was fired to the body. (R. 1887.)

Petitioner testified in her defense. (R. 1902.)  She testified that she was physically abused by Todd. (R. 1903.)  She stated that Smith's testimony was inaccurate and that she never threatened Todd at the gas station. (R. 1909.)  Petitioner testified that she shot Todd in self-defense. (R. 1910.)  First, she explained that Todd threw a big rock down, then she testified that Todd was going to hit her with a big rock, so she shot him. (R. 1912.)  According to petitioner, Todd was standing and coming at her when she shot him. (R. 1915.)  Petitioner also testified to her belief that Todd had men hiding in the woods to come after her and E.B. (R. 1940–50.)

Petitioner's daughter and Todd's stepdaughter, Tiffany Dawson, testified in rebuttal. (R. 1962.)  Petitioner had kicked Dawson out of her house because Dawson defended Todd against petitioner's allegations. (R. 1962–63.)  Dawson testified that petitioner had made false allegations against her as well and that she never saw Todd physically assault petitioner or E.B. (R. 1963.)

During the trial, the court had to sequester additional witnesses after Barksdale threatened a family member of the victim. (R. 1801–03.)

## B. Trial Court Procedural History

Petitioner was convicted after a two-day jury trial on January 8 and 9, 2020, in Campbell County Circuit Court.  On June 4, 2020, the trial court sentenced petitioner to life plus three years' imprisonment.  The final judgment order was entered on June 16, 2020.  Case Nos. CR17000248-00, CR19000072-00.

The Court of Appeals of Virginia granted in part and denied in part petitioner's appeal. (Resp't's Ex. 2, Dkt. No. 16-1.)  After briefing, on July 20, 2021, the Court of Appeals affirmed

Barksdale's convictions in an unpublished order.  (Resp't's Ex. 3, Dkt. No. 16-2; Resp't's Ex. 4, Dkt. No. 16-3.)  The Supreme Court of Virginia refused petitioner's appeal on January 31, 2022. (Resp't's Ex. 5, Dkt. No. 16-4.)

### 1. Speedy trial issues

Petitioner was indicted by a grand jury on July 10, 2017, for murder and use of a firearm in commission of a murder.  (R. 74–75.)  The murder charge had been certified from the Juvenile and Domestic Relations Court on June 5.  (R. 3–4.)  The case was continued by joint motion of the petitioner and the Commonwealth from July 10 to July 27, 2017.  (R. 83.)  On August 29, 2017, by agreement of the petitioner and the Commonwealth, the case was set for October 31. (R. 108, 1207–08.)

Petitioner moved for a continuance on September 20 and the case was continued until November 13, 2017.  (R. 125, 1218–19.)  By an order on November 15, 2017, the case was continued again pursuant to a joint motion to May 3, 2018.  Petitioner agreed to waive speedy trial rights from October 31, 2017, to May 3, 2018.  (R. 141.)  On April 4, 2018, the court granted petitioner another continuance over the Commonwealth's objection.  (R. 150, 1231–32.) On May 13, 2018, the parties agreed to set the trial for January 8, 2019, and petitioner waived speedy trial for the time period covered by the order.  (R. 178, 1236–37.)

On November 19, 2018, the trial court granted the petitioner's request to represent herself and waive counsel, and appointed Jim Childress as standby counsel.  (R. 330, 339.)  On January 4, 2019, petitioner was heard, *pro se*, on multiple motions she had filed, including motions to suppress, to recuse the trial court, to recuse the Commonwealth's Attorney, and to change venue, all of which were denied.  (R. 499, 529, 1336–37.)  The trial court granted the Commonwealth a continuance from the January 9, 2019 trial date based on the petitioners' numerous filings.  (R.

1357.)  The parties agreed to set trial for March 14, 2019, and to require petitioner to file any further motions ten days prior to trial.  (R. 1359–60.)

On February 4, 2019, the Commonwealth filed a motion to *nolle prosequi* the murder charge.  (R. 530–32.)  The Commonwealth outlined the posture of the case, including the numerous continuances, and speedy trial waivers by the petitioner.  Although the Commonwealth believed its speedy trial calculations were correct, the Commonwealth noted that the most prudent approach would be to indict the petitioner for first degree murder at the next grand jury, scheduled for March 11, 2019.  (R. 531, 1374–75.)  At the hearing on February 6, 2019, petitioner objected to the *nolle prosequi*.  (R. 1376.)  The trial court found that the motion was made in good faith, would not prejudice the petitioner, and granted the *nolle prosequi*, of the murder charge.  (R. 1383.)  Petitioner was re-indicted on March 11, 2019.  The language of the second indictment was identical to the language in the first indictment.  (R. 74, 798.)

On March 14, 2019, the trial court heard numerous pre-trial motions filed by petitioner and the Commonwealth.  (R. 857–59.)  The court heard further argument on petitioner's objection to the *nolle prosequi* of the original murder and firearm charges and her assertion of a speedy trial violation.  (R. 1436–38.)  The court denied petitioner's motions to dismiss the murder and firearm charges and the court adopted the Commonwealth's timeline of events, which included the court's prior orders.  (R. 1450.)

Then, after a lengthy hearing on March 21, 2019, wherein petitioner determined she would waive her right to represent herself, the trial court reappointed Mr. Childress and a second attorney, E. Gordon Peters, to represent the petitioner.  (R. 870–71, 1576–79.)  The court continued the case to May 20, 2019, and petitioner agreed to waive speedy trial during this time period.  (R. 870–71.)  Subsequently, the Commonwealth and petitioner moved to continue the

6

trial to January 8 and 9, 2020, and pursuant to that order, petitioner agreed to waive speedy trial

from January 9, 2019, to January 8, 2020.  (R. 946.)  Thus, pursuant to the continuance orders,

petitioner waived her speedy trial rights from September 20, 2017, to January 8, 2020.

The trial was conducted as scheduled on January 8–9, 2020.

### 2.  Closed circuit testimony proceedings

On August 7, 2017, the trial court heard a motion to allow the victim's daughter to testify

via closed-circuit television.  (R. 1177.)  At the hearing, Deborah Maxey, a licensed professional

counselor, testified as an expert in the field of professional counseling and trauma.  (R. 1188.)

Maxey testified that E.B., the daughter of the victim and petitioner, was born in 2004 and

suffered from post-traumatic stress disorder, as well as other significant issues, since witnessing

the death of her father.  (R. 1188–90.)  Maxey testified that E.B. stated she would be unable to

testify and be in the same room as her mother.  (R. 1191.)  Maxey believed that E.B. lived a

"very torturous life before this incident with her father.  She's scared to death of her mother.  Her

mother emotionally abused her on many levels."  (R. 1194.)  Maxey did not think E.B. would be

able to form answers in the presence of her mother because of her fear of her mother.  (R. 1196–

97.)  Maxey believed that E.B.'s progress in recovering from trauma would be significantly

impaired and go backwards if E.B. had to see her mother.  (*Id.*)

The Commonwealth argued that E.B. should be allowed to testify via closed circuit

television.  (R. 1198.)  Counsel for petitioner argued that the Commonwealth failed to meet their

burden to show that E.B. would suffer substantial likelihood of emotional trauma simply from

testifying in front of her.  (R. 1198.)  The trial court ruled that E.B. was unavailable pursuant to

Code 18.2-67.9.  (R. 1199.)  The court found that Maxey had seen E.B. and in her expert opinion

would suffer severe emotional trauma from having to testify in open court.  (*Id.*)  The court
granted the Commonwealth's motion.  (*Id.*)

### 3.  Insanity defense proceedings

On June 12, 2017, petitioner by counsel filed a notice of intent to present evidence of
insanity at the time of the offense.  At that point, the trial was scheduled for July 10, 2017.  (R.
1.)  On September 21, 2017, the trial court entered an order for evaluation pursuant to Virginia
Code § 19.2-168.1, to have Leigh D. Hagan, Ph.D, perform the evaluation for the
Commonwealth.  (R. 123.)

Subsequently, on November 19, 2018, petitioner requested to waive her right to counsel,
to represent herself, and moved for a continuance.  (R. 330, 339, 1257.)  The court found
petitioner's waiver of counsel to be free and voluntary and appointed Mr. Childress as her
standby counsel.  (R. 330, 339, 1265.)  Once the petitioner was representing herself, the
Commonwealth requested that the trial court require petitioner to decide whether she would
assert an insanity defense.  (R. 1275–85.)  Petitioner, acting *pro se*, ultimately withdrew her
insanity defense in a motion dated November 28, 2018.  (R. 335.)

As noted, petitioner later waived her right to represent herself, and on March 21, 2019,
Childress and Peters were appointed to represent petitioner.  (R. 870–81, 1576–79.)  On
November 22, 2019, petitioner by counsel gave notice to the Commonwealth of intent to
introduce the insanity defense.  (R. 1008, 1626–28.)  Mr. Childress stated to the court that he was
asserting the defense against his client's wishes because he believed her mental illness affected
her ability to make decisions regarding such a defense.  (R. 1626–35.)  The trial court asked
Childress if there was authority to demonstrate that he could put forth an insanity defense over
the objection of his client.  Mr. Childress cited Legal Ethics Opinion 1816.  (R. 1639.)  The

Commonwealth argued that the ethics opinion was not "new" information that would excuse petitioner's delay in notifying the Commonwealth and the court, that granting the motion would change the defense and strategy from self-defense to insanity, and only forty-eight days remained until trial, which was less than the sixty days required by Code 19.2-168.  (R. 1628.)  The Commonwealth also asserted that a continuance would not be appropriate because petitioner's minor child who witnessed the murder was approaching her sixteenth birthday and would soon fall outside of the statute allowing her to testify via closed circuit television.  (R. 1629–30.)  The court had previously made a finding that the child would suffer extreme psychological detriment if forced to testify in open court.  (*Id.*)

After taking the motion under advisement, on December 18, 2019, the trial court ultimately held that the notice was untimely, and that petitioner could not present the insanity defense.  (R. 1649.)  The court found that there was nothing new that had delayed the petitioner from asserting the defense and that there was therefore no reason to dispense with the sixty-day statutory notice requirement.  (*Id.*)  The trial court further found that a continuance was not an appropriate option because the Commonwealth would be prejudiced.  (*Id.*)  The parties also stipulated that the petitioner herself did not want to assert an insanity defense.  (R. 1652.)

### 4. Plea colloquy

Prior to trial, the court engaged in a plea colloquy with petitioner.  (R. 1665.)  Petitioner affirmed that she understood the charges against her, had enough time to discuss the charges with her attorney, had enough time to discuss possible defenses with her attorney, and had enough time to discuss her plea of not guilty with her attorney.  (R. 1667–68.)

Petitioner did tell the court that she "had witnesses that I wanted subpoenaed and also evidence that I want to put into the trial and neither one of them was—was done." (R. 1669–70.) Counsel explained:

> I'm happy to do it, Judge, and she can correct me if I'm wrong on this. There were numerous witnesses that Ms. Barksdale wanted subpoenaed that were based off of her allegations that [the victim] had attempted to kill her numerous times and was doing things in the woods surrounding their home . . . . The Court has looked over pictures and other recordings and those sort of—the evidence, in my opinion, and Mr. Gordon Peters, it just didn't exist. We had a motion in limine on that. We were barred from introducing that. We did not think it was relevant so we did not subpoena those people. Court—we previously had a hearing on sanity, I believe if sanity was an option for NGRI today that they would be relevant for that purpose only but otherwise, they are not relevant to what happened back in 2016 where [the victim] died.

(R. 1670.) Then, counsel for petitioner affirmed they were ready to proceed with trial. (R. 1671.) Petitioner told the court she was not satisfied with her attorneys. (R. 1674.) The trial court found:

> I find on the record that she's made free and voluntary pleas of not guilty. I accept your pleas of not guilty. And I also find that she understands that this will be a jury trial today, that both—both the Commonwealth and Defendant have requested a jury. And then the issues about her dissatisfaction with counsel I addressed previously, both counsel, she's got two counsel, which I don't usual [appoint], you know, in a—you know, in any—any charge other than a capital murder charge and I don't believe, based on the history of this case, that you would be satisfied with any counsel that I selected.

(R. 1677.)

## C.  State Habeas Proceedings

In September 2022, petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, alleging various claims for ineffective assistance of counsel. (Resp't's Ex. 6, Dkt. No. 16-5.) The petition was dismissed on July 12, 2023. (Resp't's Ex. 8, Dkt. No. 16-7.)

## II.  ANALYSIS

### A.  Motions to Appoint Counsel

There is no constitutional right to counsel in post-conviction proceedings. *See Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997).  The court may, however, appoint counsel to a financially eligible habeas petitioner if justice so requires.  *See* 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).  Upon review of Barksdale's petition, the court concludes that the issues in this matter are not complex and the interests of justice do not require the appointment of counsel. Accordingly, petitioner's motions to appoint counsel will be denied.

### B.  Motion for Evidentiary Hearing

In determining whether a case warrants an evidentiary hearing, a federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  A federal court must also consider the standards set forth in § 2254 when considering whether an evidentiary hearing is appropriate. *Booth v. Anderson*, Civil Action No. 3:22cv426, 2023 WL 5352304, at *15 (E.D. Va. Aug. 21, 2023) (citing *Schriro*, 550 U.S. at 474).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 474.

Given the standard of review, discussed below, the court finds that an evidentiary hearing is not required as the state court record precludes habeas relief in federal court.  Therefore, the court will deny the motion for an evidentiary hearing.

**C. Merits Standard of Review**[2]

Pursuant to § 2254(d), "a petitioner is entitled to relief only if the state court adjudication of their claim was [1] 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court'; or [2] 'based on an unreasonable determination of the facts in light of the evidence presented.'" *Allen v. Stephan*, 42 F.4th 223, 246 (4th Cir. 2022) (quoting 28 U.S.C. § 2254(d)). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review to factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015).

"Clearly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). "A state court's decision is 'contrary to' clearly established federal law under § 2254(d)(1) when it 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Allen*, 42 F.4th at 246 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). A state court's decision is an "unreasonable application" of clearly established federal law if the state court correctly identified the governing legal principle but "'unreasonably applie[d] that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). This standard is meant to be "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "'The ruling must be objectively unreasonable, not merely

---

[2] Petitioner filed a lengthy response to the motion to dismiss—179 total pages, including exhibits incorporated in the body of the response. (Dkt. Nos. 44, 44-1, 44-2.) The court has reviewed petitioner's submission, which is largely a point-by-point discussion as to whether petitioner agrees or disagrees with the facts and arguments set forth in respondent's motion to dismiss. None of petitioner's arguments or factual disagreements are sufficient to establish that petitioner has met the high standard to obtain habeas relief in federal court.

wrong; even clear error will not suffice.'" *Allen*, 42 F.4th at 246 (quoting *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017)).  The petitioner "must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

A state court's factual determinations, meanwhile, "are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence." *Allen*, 42 F.4th at 246 (citing 28 U.S.C. § 2254(e)(1)).  A state court's decision is based on an "unreasonable determination of the facts in light of the evidence presented" under § 2254(d)(2) when it is "'sufficiently against the weight of the evidence that it is objectively unreasonable.'" *Id.* (quoting *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010)).  "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is "especially so" when the state court "resolved issues like witness credibility." *Id.* (quoting *Cagle v. Branker*, 520 F.3d 320, 324–25 (4th Cir. 2008)).  Credibility judgments may be overturned only when the error is "stark and clear." *Id.*

Even if a petitioner meets his burden under § 2254(d) and establishes the state court erred, "habeas relief will not be granted unless the error had substantial and injurious effect or influence in determining the jury's verdict" or there is at least "grave doubt as to the harmlessness" of the error. *Allen*, 42 F.4th at 246–47 (quoting *Brecht v. Abrahamson*, 507 U.S.

619, 637 (1993) and *Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002) (internal quotation marks omitted)).

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, the court looks to the last reasoned state court opinion. *See Lewis v. Clarke*, CASE NO. 7:20CV00421, 2021 WL 1541034, at *5 (W.D. Va. Apr. 20, 2021) ("On habeas review, a federal court is to 'look through' the summary decision to the last court decision providing a rationale for the merits decision and to presume that the state high court adopted the same reasoning.") (citing *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)). In this instance, the relevant opinion is the opinion of the Supreme Court of Virginia dismissing Barksdale's state habeas petition.  (Resp't's Ex. 8.)

## D.  Ineffective Assistance of Counsel

When a state prisoner seeks § 2254 relief for ineffective assistance of counsel, courts apply the "highly deferential" *Strickland* standard.  *Owens v. Stirling*, 967 F.3d 396, 412 (4th Cir. 2020).  In *Strickland*, the Supreme Court set forth a two-part test to evaluate ineffective assistance of counsel claims.  First, the petitioner must show counsel's performance was deficient and fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687–88. Second, the petitioner must show prejudice, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Counsel gets the strong presumption that he or she rendered "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013).

"AEDPA and *Strickland* thus provide 'dual and overlapping' lenses of deference, which we apply 'simultaneously rather than sequentially.'" *Owens*, 967 F.3d at 411. "This double-deference standard effectively cabins our review to a determination of whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016). "Section 2254(d) codifies the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. Thus, surmounting *Strickland*'s high bar is never an easy task. But establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020) (internal citations omitted).

## E. Petitioner's Claims

Petitioner lists eight separate grounds for relief based on ineffective assistance of counsel, which the court will address in turn.

### 1. Ground one: admission of mental health evaluations

Petitioner alleges that she was denied effective assistance of counsel because counsel did not object to admission of psychological evaluations during a hearing on her motion to represent herself. (Habeas Pet. 46.) The state habeas court found that this claim did not meet either prong of the *Strickland* analysis:

> Shortly after petitioner was arrested counsel sought to have her evaluated for competency to stand trial and for sanity at the time of the offense. Dr. David Rawls evaluated petitioner and determined she suffered from delusional disorder. Petitioner believed she and E.B. were being harassed and threatened by people associated with Todd and that Todd was having an affair. She claimed to see and hear things that others could not see or hear. Dr. Rawls concluded petitioner's "delusional beliefs led to significant marital discord that culminated in murdering her husband" and that she "was not able to appreciate the wrongfulness of her actions due to delusional

beliefs." However, Dr. Rawls also concluded petitioner was competent to stand trial.

Dr. Leigh D. Hagan also evaluated petitioner for sanity at the time of the offense. Like Dr. Rawls, Dr. Hagan opined petitioner suffered from delusional disorder. However, Dr. Hagan concluded petitioner appreciated the nature and consequences of her actions, possessed the capacity to distinguish between right and wrong, and possessed the capacity to comport her behavior to the requirements of the law.

Petitioner's counsel subsequently filed notice of intent to present a defense of insanity. However, petitioner sought and was granted the right to represent herself, and she subsequently withdrew the notice and instead advised the court that she intended to present a defense of self-defense and defense of others. After significant delay, caused in part by petitioner's actions, the Commonwealth moved to withdraw by order of nolle prosequi the murder indictment, citing speedy trial concerns. Petitioner was reindicted for murder on March 11, 2019.

On March 21, 2019, at the urging of the trial court, petitioner agreed to accept the appointment of counsel. The court reappointed Jim Childress, who had also acted as petitioner's standby counsel when she represented herself, and appointed a second attorney, E. Gordon Peters, to assist petitioner. On October 2, 2019, petitioner moved the court to appoint her new counsel or to permit her to represent herself. At a hearing on the motion, the Commonwealth admitted Dr. Rawls' and Dr. Hagan's reports and argued petitioner was not competent to conduct trial proceedings by herself. Ultimately, the court agreed and denied the motion for new counsel and for self-representation.

Accordingly, contrary to petitioner's claim, the reports were authored as a consequence of petitioner's murder of Todd, not an unrelated crime. Further, counsel could reasonably have concluded the reports were relevant to the issue of whether petitioner was competent to represent herself. See Indiana v. Edwards, 554 U.S. 164, 175-77 (2008) (a state may limit a defendant's right to self-representation "by insisting on representation at trial [] on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented."). Consequently, counsel could reasonably have determined any argument that the reports were inadmissible because petitioner no longer wished to pursue a defense of self-defense or defense of others would have been meritless. See Correll v. Commonwealth, 232 Va. 454, 470 (1987) (counsel not ineffective for failing to make a meritless objection). Thus, petitioner has failed to demonstrate that counsel's

> performance was deficient or that there is a reasonable probability
> that, but for counsel's alleged error, the result of the proceeding
> would have been different.

(Resp't's Ex. 8 at 1–3.)  Petitioner offers no basis for counsel to have objected to the admission

of these mental health reports.  Even though counsel did not ultimately pursue an insanity

defense, the reports were clearly relevant to the issue at the hearing pertaining to whether

petitioner was competent to represent herself.  *See, e.g.*, *Washington v. Murray*, 952 F.2d 1472,

1482 (4th Cir. 1991) (no ineffective assistance of counsel where counsel failed to object to

admissible evidence).  Thus, counsel was not deficient for failing to object to the reports, and the

state court's ruling was not contrary to or an unreasonable application of the *Strickland* standard.

Petitioner argues, as a general matter, that her complaints about and issues with counsel's

performance is not done with the benefit of hindsight because she was constantly complaining

about her attorney or attorneys to the judge over the entire course of the proceedings.  (Dkt. No.

44-1 at 67.)  Even so, petitioner's constant and ongoing questioning of trial strategy is not

evidence of an "extreme malfunction[] in the state criminal justice system[]."  *Valentino*, 972

F.3d at 580.  Petitioner is not entitled to relief on this claim.[3]

## 2.  Ground two: police video showing weapon

In this claim, petitioner alleges that she was denied effective assistance of counsel

because counsel failed to play a video for the jury that would have shown, according to

petitioner, that Todd was armed with a huge rock when petitioner shot him.  (Habeas Pet. 59.)

The state habeas court rejected this claim for the following reasons:

> The record, including the trial transcript, demonstrates the
> Commonwealth's evidence showed Todd was on his knees placing
> large rocks into a hole under a fence that his dogs had dug.  Counsel

---

[3] Petitioner also repeatedly argues that her trial counsel was "working with the prosecutor" to get her convicted.  (Dkt. No. 44-1 at 66.)  This argument has no factual basis and is nothing more than unfounded speculation.

> could reasonably have determined that any evidence showing Todd still had his hands on one of the rocks in the hole at the time his body was moved would have further supported the Commonwealth's case against petitioner and would not have supported her contention that Todd was on his feet lunging for her with the rock when she shot him.  Accordingly, counsel could reasonably have decided not to present such evidence.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Resp't's Ex. 8 at 5.)  Petitioner now argues that the "record is wrong" and that Todd was not on his knees, he was standing when shot and fell to his knees.  (Dkt. No. 44-2 at 8.)  Other than her own argument, petitioner offers no basis to reject the state court's factual determination, which can only be rebutted by clear and convincing evidence.  *Allen*, 42 F.4th at 246.  Counsel's decision not to introduce the video was a reasonable strategic decision that does not run afoul of the deferential *Strickland* standard.  Further, the state court's decision was not contrary to or an unreasonable application that standard.  As a result, petitioner is not entitled to relief on this claim.

### 3.  Ground three: police video showing slope of ground

Petitioner also claims that counsel was ineffective for not showing a video recording that would have shown the ground between her and Todd sloped downward.  (Habeas Pet. 63.)  The state habeas court again rejected the claim:

> The record, including the trial transcripts and the Commonwealth's trial exhibits, demonstrates Todd was five inches taller than petitioner, and that he was shot in the back of the head.  Further, E.B. found petitioner immediately after the shooting standing three feet from Todd pointing the gun down at him.  In addition, photographs from the scene demonstrate the ground sloped gently away from Todd's body such that petitioner would have been lower than Todd at the time of the shooting, not higher.  Accordingly, counsel could reasonably have determined any evidence or argument that the slope accounted for the downward trajectory of the bullet would have been futile.  Thus, petitioner has failed to

18

> demonstrate that counsel's performance was deficient or that there
> is a reasonable probability that, but for counsel's alleged error, the
> result of the proceeding would have been different.

(Resp't's Ex. 8 at 6.)  Petitioner argues that the video should have been played because it

bolstered her testimony that Todd was not kneeling during their interaction, as the slope could

have caused the downward trajectory of the bullet.  (Dkt. No. 44-2 at 10.)  As explained by the

state habeas court, the reasoning of which is entitled to deference, counsel's decision not to

introduce video evidence showing that the ground sloped downward did not result in prejudice

because the evidence in the record demonstrates that the downward trajectory of the bullet was

due to Todd kneeling on the ground and petitioner shooting down at his head.  Petitioner is also

not entitled to relief on this claim.

### 4.  Ground four: Rebecca Smith's police statement

In this claim, petitioner alleges that her trial counsel was ineffective for not properly

challenging Rebecca Smith's testimony.  (Habeas Pet. 67.)  The state habeas court rejected this

claim because:

> The record, including the trial transcript, demonstrates that Smith
> testified she saw petitioner approach Todd, who was pumping gas
> into his truck.  Petitioner gestured angrily at Todd and yelled at him.
> Todd calmly finished filling his tank, purchased a drink, and left.
> Petitioner went into the ladies' room and, when she came out, Smith
> heard her comment that Todd "better run."
>
> Contrary to petitioner's claim, Smith did not testify Todd told
> petitioner they should not be talking.  Instead, Smith testified she
> did not recall Todd saying anything to petitioner.  Further, contrary
> to petitioner's claim, the photographs she has attached to her petition
> do not show the gas pumps were further away than the six or seven
> feet that Smith estimated, nor do the photographs suggest Smith
> would have been unable to see or hear petitioner and Todd.
> Consequently, counsel could reasonably have determined that this
> line of inquiry would not have been helpful to petitioner.  Finally,
> counsel could reasonably have determined that whether the
> altercation between petitioner and Todd occurred the day before the

murder or two days before the murder was insignificant and that questioning Smith about the specific date would not have been helpful to petitioner.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Resp't's Ex. 8 at 6–7.)  The court agrees with this analysis.  Pertaining to prejudice, the court also accounts for the other evidence in the record establishing petitioner's guilt, including the testimony of E.B., autopsy evidence showing the downward path of the bullet, and ballistic evidence connecting the bullet found in Todd's head to the firearm found at the scene.  Thus, a different cross-examination strategy for Smith's testimony about things that happened before the day of the murder would not have caused a different result at trial.  Petitioner argues that this was "not a tactical decision" because her counsel "didn't defend me" and there was "nothing to loose [sic] by doing this discrediting the witness" (Dkt. No. 44-1 at 18), but cross-examination is squarely within the scope of strategy left to the discretion of trial counsel.  *See Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995) (advising against a "grading of the quality of counsel's cross-examination" under the *Strickland* standard).

In sum, the state court's resolution of this claim was not contrary to, or an unreasonable application of, the standard for ineffective assistance of counsel set forth in *Strickland*.

### 5. Ground five: failure to call witnesses

Petitioner alleges that trial counsel was ineffective for releasing the witnesses she had subpoenaed, particularly Mike Milnor, the Altavista County Police Chief.  (Habeas Pet. 71.)  She wanted testimony from these witnesses to pursue various theories, including that Todd had friends of his following petitioner and threatening her.  (*Id.* at 74.)  Once again, the state habeas court found that petitioner failed to meet either part of the *Strickland* standard:

> Petitioner has failed to provide an affidavit from Chief Milnor or to
> proffer his expected testimony . . . . Further, petitioner has not
> articulated how evidence that unidentified persons were walking
> toward her house at some unspecified time would have supported
> her claim that she shot Todd because he lunged toward her with a
> rock.  In addition, the record, including the Commonwealth's trial
> exhibits, demonstrates the Commonwealth admitted photographs of
> Todd as he was found after the shooting which show his face pressed
> to the fence.  Contrary to petitioner's contention, nothing about the
> position of Todd's face suggests he was standing at the time
> petitioner shot him.   Further, counsel could reasonably have
> determined any evidence that there was a gun in Todd's truck was
> irrelevant, given that Todd was kneeling behind the truck and not in
> a position to access such a weapon at the time he was shot.  Thus,
> petitioner has failed to demonstrate that counsel's performance was
> deficient or that there is a reasonable probability that, but for
> counsel's alleged error, the result of the proceeding would have been
> different.

(Resp't's Ex. 8 at 7–8.)  Petitioner's theory was that her husband had people following her and threatening her, but she has presented no evidence to support this claim, or that Milner had any relevant knowledge.  Thus, petitioner has not demonstrated deficient performance or prejudice without a proffer of potential testimony.  *See, e.g.*, *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (ineffective assistance claim insufficient to warrant relief where petitioner alleges counsel ineffective for failing to call certain witnesses, but petitioner fails to proffer what witnesses would have said).  In this regard, the state habeas court's reasoning was not contrary to or an unreasonable application of *Strickland*.

### 6. Ground six: right to confront accuser

This claim relates to petitioner's right to confront her accuser, her daughter, who testified on closed circuit television.  (Habeas Pet. 83.)  The state habeas court rejected this claim also:

> The record, including the transcript of the hearing on the motion to
> permit E.B. to testify via closed circuit television, demonstrates
> counsel did object, arguing the Commonwealth had failed to meet
> her burden under § Code 18.2-67.9 to show a substantial likelihood
> E.B. would suffer severe emotional trauma from testifying in

> petitioner's presence. Petitioner fails to articulate any additional argument counsel should have made in support of his objection. Further, petitioner fails to identify any grounds upon which counsel could reasonably have argued the court should reconsider its decision to allow E.B. to testify by closed circuit television. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Resp't's Ex. 8 at 3.) Petitioner has argued that her counsel "allowed" E.B.'s closed circuit testimony to occur. (Dkt. No. 44-1 at 66.) Given that counsel did object to the testimony, the court must conclude that counsel's performance was not deficient under *Strickland*, and the state court's resolution was not contrary to or an unreasonable application of that standard.[4]

### 7. Ground seven: insanity defense

In this claim, petitioner alleges that counsel was ineffective for not filing a timely notice to present an insanity defense. (Habeas Pet. 88.) The state habeas court rejected this claim based on the deficient performance prong of *Strickland*:

> The record, including the transcripts of the hearings on petitioner's motions for new counsel or to represent herself and of the hearing on the Commonwealth's objection to counsel's second notice of intent to pursue an insanity defense, and the manuscript record, demonstrates that counsel timely filed a notice of intent to pursue an insanity defense. However, after petitioner invoked her right to represent herself, she withdrew the notice. Petitioner subsequently agreed to allow the court to reappoint counsel, and counsel considered again filing a notice of intent to pursue an insanity defense. Petitioner, however, vehemently opposed this. Counsel consulted the Virginia Bar on whether it was ethically permissible to pursue an insanity defense against a client's wishes and were advised it was not. When the court determined on November 15, 2019, that petitioner was not competent to represent herself, counsel promptly revisited the issue with the Bar and were advised that they

---

[4] Further, to the extent that petitioner is arguing that she was denied her right to confront her accuser, or any other constitutional right was violated aside from the right to effective assistance of counsel, such claims are procedurally defaulted. The state habeas court found those claims barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) (Resp't's Ex. 8 at 5, 8), which is an adequate and independent state ground for denial of a state habeas petition. *Prieto v. Zook*, 791 F.3d 465, 468 (4th Cir. 2015).

could present an insanity defense against their client's wishes if her mental illness impacted her ability to make decisions about her case. Counsel filed a second notice of intent to pursue an insanity defense on November 21, 2019, forty-eight days before the January 8, 2020, start of petitioner's trial. The Commonwealth objected to the notice as untimely, arguing that under Code § 19.2-168 petitioner's counsel was required to file the notice at least sixty days prior to trial and that the Commonwealth would be prejudiced by the late notice. The trial court ultimately agreed the notice was untimely and ruled counsel could not present an insanity defense on petitioner's behalf.

Thus, the record demonstrates that counsel did file a timely notice, but the notice was withdrawn by petitioner. Further, counsel continued to diligently pursue the possibility of an insanity defense and, when circumstances had changed such that counsel determined they could pursue such a defense despite petitioner's objection, they did so.

Moreover, petitioner has failed to articulate in what way counsel's use of Dr. Rawls' testimony at sentencing was inappropriate or otherwise ineffective. Thus, petitioner has failed to demonstrate that counsel's performance was deficient.

(Resp't's Ex. 8 at 8–9.)  The court agrees with the state habeas court that counsel's untimely notice of insanity defense was not deficient performance under the circumstances presented. Petitioner strongly opposed pursuing the defense, and counsel initially received feedback that he could not pursue such a defense over the objection of his client.  Moreover, courts have reasoned that counsel is obliged to follow a client's wishes pertaining to the pursuit of an insanity defense. *See Foster v. Strickland*, 707 F.2d 1339, 1343–44 (11th Cir. 1983) (relying upon the American Bar Association Code of Professional Responsibility to conclude that counsel "had an ethical obligation to comply with his client's wishes and was thus unable to present an insanity defense" and "Petitioner, who preempted his attorney's strategy choice, cannot now claim as erroneous the very defense he demanded [counsel] present"); *Navarro v. Ryan*, CV-12-1899-PHX-GMS (JFM), 2018 WL 6681867, at *30 (D. Ariz. Jan. 12, 2018) (citing *Foster*, 707 F.2d at 1343–44); *Murphy v. Dennehy*, Civil Action No. 05-12246-DPW, 2007 WL 430754, at *7 (D. Mass. Feb. 5,

2007) ("The decision to plead insanity is ultimately a decision of the client's, and it his attorney's obligation to follow the client's wishes.  Thus, counsel's decision to follow his client's orders and abandon the mental illness defense was not unreasonable.").

Accordingly, the court finds that the state court's determination that counsel's decision to follow his client's wishes and not pursue an insanity defense was not deficient performance was not contrary to or an unreasonable application of *Strickland*.  Like the other claims, petitioner is not entitled to relief on this claim in federal court.

### 8.  Ground eight: speedy trial

Finally, petitioner argues that counsel was ineffective because her speedy trial rights were violated.  (Habeas Pet. 91.)  The state habeas court rejected this claim under both prongs of the *Strickland* analysis:

> Petitioner does not articulate why counsel's decisions to seek or agree to various continuances were unreasonable, nor has she shown that but for counsel's agreement the Commonwealth would have been unable to timely bring petitioner to trial.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Resp't's Ex. 8 at 4.)  Moreover, the record reflects that the lengthy delay in bringing this matter to trial was largely due to petitioner's erratic behavior, such as representing herself for a period of time and filing numerous frivolous motions.  Thus, it was to her benefit to delay the trial and attempt a meritorious defense.  Petitioner argues that some of the delays were due to the Commonwealth (Dkt. No. 44-2 at 48), but this not relevant to her counsel's alleged ineffectiveness, and in any event, the record clearly demonstrates petitioner's conduct in causing several delays.

In sum, the court finds that the state court's resolution of this claim was not unreasonable under the *Strickland* standard.

## F. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make the requisite showing.  Therefore, the court declines to issue a certificate of appealability.  However, petitioner may still ask the United States Court of Appeals for the Fourth Circuit to issue such a certificate.  *See* Fed. R. App. P. 22(b).

## III.  CONCLUSION

For the reasons stated in the foregoing opinion, the court will issue an appropriate order granting respondent's motion to dismiss, denying Barksdale's § 2254 petition, and declining to issue a certificate of appealability.  Barksdale's motions to appoint counsel and for an evidentiary hearing will also be denied.

Entered: August 23, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge